UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62435-CIV-MARTINEZ/SNOW

EDWIN MELO,

        Plaintiff,

v.

FALLS MANAGEMENT SERVICES CO.,
a Florida corporation, TAPLIN MEADOWS
DEVELOPMENT CORP., a Florida
corporation, JACK TAPLIN, an individual,
and LILIAN GIL, an individual,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendants' Motion to Compel Arbitration and Stay Lawsuit (ECF No. 24), which was referred to United States Magistrate Judge Lurana S. Snow (ECF No. 26).

## I. BACKGROUND

This action was filed on October 11, 2018, under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). The Plaintiff was employed by Defendants in various capacities from October 2015 to May 2018 and claims to be entitled to unpaid overtime in the amount of approximately $158,000 (Plaintiff's Amended Statement of Claim (ECF No. 33)), plus an additional amount as liquidated damages.[1] According to the Complaint, the Defendant Falls Management Services Co. owns and operates a property in Pembroke Pines, Florida, where the Plaintiff worked, and the Defendant Taplin Meadows Development Corp. owns another property at which the Plaintiff worked. Complaint (ECF No. 1), at ¶¶ 6-7. The Defendants Jack Taplin and Lilian Gil are the owner

---

[1] From October 2015 to May 2016, Plaintiff was employed as the "Director Chief Engineer," earning $27 hourly, then from May 2016 until May 2018 he worked as the "On-Site Owner's Representative and Owner's and Architects Eyes and Ears," also earning $27 hourly. (Complaint, at ¶ 15) According to Plaintiff's Complaint, he regularly worked more than forty hours weekly. (Id., at ¶ 24)

and general manager of both corporate Defendants, and have control over the properties at which the Plaintiff worked. Id., at ¶ 10.

The Defendants seek to compel arbitration, in reliance on an agreement which they claim was signed by the Plaintiff on March 21, 2011, with Strategic Outsourcing, Inc., the Defendants' payroll services provider, titled "Assigned Employee Acknowledgments" (the "Agreement") (ECF No. 24-1). The Plaintiff opposes the demand for arbitration and denies that he ever read the Agreement. He also argues that the Agreement is not enforceable as there is no evidence that the Defendants were party to that Agreement and even if the Defendants can enforce the Agreement, it doesn't cover the Plaintiff's FLSA claim.

## II. DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "requires courts to stay a case that is covered by a binding arbitration clause so it may proceed in arbitration." Hernandez v. Acosta Tractors, Inc., 898 F.3d 1301, 1305 (11th Cir. 2018) (reversing lifting of stay and erroneous entry of default judgment against party whose failure to pay for arbitration had resulted in default in arbitration).[2]

### A. The FAA

The FAA's "primary substantive provision," id., is Section 2, which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract*.

---

[2] The requirement to stay the action pending arbitration is found in Section 3 of the FAA, which provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

9 U.S.C. § 2(emphasis added) The term "commerce" is defined in Section 1 of the FAA, as "commerce among the several States or with foreign nations, ... but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Section 3 of the FAA requires that a court stay an action pending arbitration, and Section 4 of the FAA describes the court's duty to hear the parties if the "making of the agreement for arbitration" is in issue.

Earlier this year the Supreme Court noted that they have "long stressed the significance" of the sequencing in the sections of the FAA. The Court noted that when the FAA was adopted in 1925, "Congress had already prescribed alternative employment dispute resolution regimes for many transportation workers [and] it seems that Congress 'did not wish to unsettle' those arrangements in favor of whatever arbitration procedures the parties' private contracts might happen to contemplate." New Prime, Inc. v. Oliveira, __ U.S. __, 139 S.Ct. 532, 537 (2019), citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 (2001). In Circuit City, the Supreme Court first reviewed the language in Section 1 of the FAA and determined that Congress intended the term "other class of workers engaged in foreign or interstate commerce" to be limited by the preceding words describing the exception as applying to "seamen" or "railroad employees." 532 U.S. at 114. The Court narrowly construed the "engaged in commerce" exception and found it did not apply to employment contracts in general, and that the mandatory arbitration provisions of the FAA were applicable to all contracts of employment except those involving "transportation workers." Circuit City, 532 U.S. at 119. See, also, Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) (applying Circuit City and finding that account manager who made out-of-state deliveries for his employer was not excluded from mandatory arbitration provisions of FAA).

In New Prime, the Supreme Court held that a court must first decide whether the "contracts of employment" exclusion applies, before employing the court's powers under Sections 3 and 4 to stay litigation and compel arbitration. 139 S.Ct. at 538. "[T]he enforceability of arbitration

provisions under §§ 3 and 4 depends on whether those provisions are part of a written maritime contract or a contract evidencing a transaction involving commerce under § 2 - which, in turn, depends on the application of § 1's exception for certain contracts of employment." Id. (internal quotations omitted), citing Southland Corp. v. Keating, 465 U.S. 1, 10-11 and n.5 (1984).[3]

As Supreme Court precedent makes clear, a worker engaged in commerce is not able to avoid the mandatory arbitration provisions of the FAA unless that worker is a transportation worker, according to Sections 1 and 2 of the FAA, or unless "grounds exist at law or in equity for the revocation" of the worker's agreement to arbitrate. In this case, there is no claim that the Plaintiff is a transportation worker; instead, the Plaintiff claims that there was never an agreement to arbitrate and even if there was such an agreement, it is invalid and also is not applicable to his FLSA claim.

**B. The Plaintiff agreed to arbitration of disputes "arising from or relating to" his employment**

As has often been observed, arbitration is a matter of contract, and the FAA requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). To determine whether the parties agreed to arbitrate their dispute, a court applies federal substantive law of arbitrability. Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011). Section 4 of the FAA provides:

> A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed .... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the

---

[3]An agreement to arbitrate sometimes includes a clause, known as the delegation clause, which gives the arbitrator the authority to decide the initial question of whether the parties' dispute is subject to arbitration. "A delegation clause is merely a specialized type of arbitration agreement, and the Act 'operates on this additional arbitration agreement just as it does on any other.'" New Prime, 139 S. Ct. at 538, quoting Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010).

> court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default ... the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may ... demand a jury trial of such issue ....

9 U.S.C. § 4. In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), the Supreme Court noted that the requirement in Section 4 of the FAA that the court first be satisfied that the "making of the agreement for arbitration" is not in issue before staying the case permits the court to consider claims of fraud in the procuring of the arbitration agreement itself but "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id., at 404. Under the "severability principle," courts treat a challenge to the validity of an arbitration agreement separately from a challenge to the validity of the entire contract in which the arbitration agreement is found. New Prime, 139 S.Ct. at 538 (citation omitted). See, also, Miccosukee Tribe of Indians of Fla. v. Cypress, 814 F.3d 1202, 1208 (11th Cir. 2015) ("[W]here an agreement containing an arbitration provision exists, allegations that the entire agreement was the product of fraud must be presented to the arbitrator for resolution.... [In contrast, when] a party opposing arbitration alleges specifically that the arbitration provision itself [and not the entire agreement] was the product of fraud, then the court is to address the allegation of fraud before ordering arbitration.").

**1. Plaintiff's claims of fraud are rejected**

The Plaintiff argues that there was "fraud in the factum" and claims that he "challenge[s] the contract as a whole on a ground that directly affects the entire agreement, here fraud in the factum, rendering the whole alleged contract invalid." Response (ECF No. 30), at 18. "Here, Melo never agreed to the contract and his signing of it constitutes fraud in the factum." Id. Fraud in the factum, which is found rarely, is distinguished from fraud in the inducement. An example of a successful claim for fraud in the factum is "when a blind person signs a mortgage when misleadingly told that the paper is just a letter." Geico Marine Ins. Co. v. Treasure Coast Maritime, Inc., No. 2:18-CV-14419, 2019 WL 467854 (S.D. Fla. Feb. 6, 2019), citing Black's Law Dictionary

(10th ed. 2014). A party's failure to read a contract does not support a claim of fraud in the factum. A party "who executes a written document in ignorance of its contents cannot plead ignorance in order to avoid the effect of the document." Id., citing Quality Foods, Inc. v. U.S. Fire Ins. Co.,715 F.2d 539, 542 (11th Cir. 1983).

To the extent that the Plaintiff inartfully was attempting to claim that his entire contract was procured by fraud, *i.e.*, a claim of fraud *in the inducement*, that question would be for an arbitrator to decide. To the extent that the Plaintiff is attempting to claim fraud in the inducement as to only the arbitration provision, the Court rejects the Plaintiff's argument as lacking support, for the reasons discussed below.

The Defendants attached to their Motion to Compel Arbitration a copy of the Agreement, which provides:

> I and SOI mutually agree that any legal dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company arising from arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator heard in the capital or largest city of the state in which I work or another mutually agreed location.... This agreement to arbitrate is enforceable as a contract under the Federal Arbitration Act and any other laws validating arbitration agreements. If any part of it is invalid or unenforceable for any reason, the remainder of this agreement to arbitrate will still be enforceable.

(ECF No. 24-1).[4] ("SOI" is Strategic Outsourcing, Inc., and "Company" is defined as "the business for which you perform services." Id.) The agreement is dated March 21, 2011, and bears the Plaintiff's signature. Id.

According to a Declaration of Defendant Lillian Gil, who serves as the Area Property Director for the corporate Defendants, she has been responsible for many years for ensuring that employment forms and policies are kept in each employee's personnel file as part of the corporate Defendants' business records. Declaration of Gil, dated November 16, 2018 (ECF No. 24-1), at ¶¶

---

[4]The Agreement also provides: "If a matter is heard in court and arbitration for any reason, I and SOI mutually waive any right to a jury trial." (ECF No. 24-1)

1-2. Defendant Gil states that in March 2011, Defendant Falls Management began using Strategic Outsourcing as its "professional employer organization ("PEO") to provide payroll and other related administrative services." Id., at ¶ 2. Defendant Gil states that the personnel file for Plaintiff Melo contains the completed Agreement which he signed. Id., at ¶ 8.

In a sworn Declaration provided in response to the Motion to Compel Arbitration, Plaintiff states that he had never seen the document until recently. Declaration of Melo, dated December 12, 2018 (ECF No. 30-1), at ¶ 3. He states that he was asked to sign some documents in 2011 when Defendant Jack Taplin's company decided to use a payroll company (Strategic Outsourcing), but that he was told they were "simply documents that would authorize the new payroll company" to provide his pay. Id. Plaintiff argues that although the Agreement "does appear to have my signature on it," it was procured by fraud because he was told that it simply had to do with his receiving pay and for no other reason, and that he was "instructed not to read it, and could not read it." Id., at ¶ 4. He also claims that arbitration was never mentioned to him by any of the Defendants or by anyone else during his employment by Defendants, and that he was never provided with the document. Id., at ¶¶ 5-8, 10-14, 17-21.

As noted above, the failure to read a document before signing it does not relieve the signer of the effect of the document. Geico Marine Ins. Co. v. Treasure Coast Maritime, Inc., No. 2:18-CV-14419, 2019 WL 467854 (S.D. Fla. Feb. 6, 2019), citing Quality Foods, Inc. v. U.S. Fire Ins. Co.,715 F.2d 539, 542 (11th Cir. 1983). The Eleventh Circuit directs courts to employ a "summary judgment-like standard" when determining whether parties did or did not enter into an arbitration agreement. In other words, a court can "conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such agreement." Bazemore v. Jefferson Capital Systems, LLC, 827 F.3d 1325, 1333 (11th Cir. 2016). A dispute is not "genuine" if it is "unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Id.

Applying these principles to the parties' dispute, the Court finds as a matter of law that the parties entered into an arbitration agreement, as there is no genuine dispute of material fact as to that issue. The Plaintiff's attempts to create an issue of fact by arguing that he suffered from fraud in the factum or fraud in the inducement are not supported by significantly probative evidence. The Court finds that the Plaintiff's admission that he signed the document, and the failure of the Plaintiff to support his claims of fraud, are sufficient to find that the Plaintiff agreed to arbitrate his disputes arising from or relating to his employment by the Defendants.

**2. The Defendants are entitled to enforce the arbitration agreement**

The Plaintiff argues that the Defendants were not signatories to the arbitration agreement and should not be permitted to enforce that agreement. The Plaintiff also argues that his employer changed payroll companies in February 2018, approximately three months before the Plaintiff's employment ended, Declaration of Melo (ECF No. 30-1), at § 2, and that the arbitration agreement expired at that time.

State law governs the issue of whether an enforceable agreement to arbitrate exists. Bazemore v. Jefferson Capital Systems, LLC, 827 F.3d 1325, 1329-30 (11th Cir. 2016). Florida law requires offer, acceptance, consideration and sufficient specification of essential terms in order to find a valid contract exists. St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla. 2004). Continued employment after an employee signs an agreement to arbitrate, even where an employee does not recall the agreement, can be consideration for the agreement. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir. 2005) (noting that "all material terms ... were set forth in the written [dispute resolution policy]"). It is undisputed that Plaintiff continued to work for the Defendants for several years after signing the arbitration agreement in 2011.

Even if the Plaintiff had not signed the Agreement, he could not avoid its terms under the circumstances here presented. While the FAA requires that an agreement to arbitrate be in writing, the agreement need not be signed by the parties to the agreement. "[T]he overwhelming

weight of authority supports the view that no signature is required to meet the FAA's 'written' requirement." Caley, 428 F.3d at 1369 (finding employees accepted unsigned arbitration agreement by continuing their employment).

   The Defendants also need not have signed the Agreement or been direct parties thereto. Non-parties can enforce arbitration agreements, as long as the relevant state law would allow enforcement of the agreement. Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011). In Lawson, the Court of Appeals applied Georgia law (which the Plaintiff claims is the same as Florida law on this issue) and found that an agreement to arbitrate which was included in the plaintiffs' auto loan contract was not enforceable by the provider of a credit life insurance policy, which the plaintiffs had sued to recover unearned premiums after they paid off their auto loan early. "[C]ontrary to Life of the South's argument, the fact that the Lawson's complaint makes reference to and presumes the existence of the loan agreement does not mean that the Lawson's loan agreement with the [car] dealership, or their obligations under that agreement, are the legal basis for their claims." Id., 648 F.3d at 1173. The plaintiffs' claims in Lawson rested on their separate agreement with the credit life insurance company and the legal obligations owed to the plaintiffs under that agreement. Id.

   The Lawson decision does not support Plaintiff's argument. The Plaintiff's claim in this action is for wages which he claims he was owed based upon his employment and which his employer failed to pay. The Agreement signed by the Plaintiff provided that "any legal dispute ... arising from or relating to my employment, *wages,* [etc.] ... will be resolved exclusively through binding arbitration." Agreement (ECF No. 24-1). Moreover, the Agreement specifically refers to the Plaintiff's employer as being within the terms of the binding arbitration, as the Plaintiff agreed to arbitrate "any legal dispute involving SOI, Company [for which you perform services], or any ... officer, or director of SOI or Company." Id. The Agreement clearly referred to the Plaintiff's

employer, the "Company," and the Court finds that the Defendants are entitled to enforce this Agreement.[5]

The Court also rejects the Plaintiff's argument that the arbitration agreement cannot be enforced in this action because, according to the Plaintiff, the Defendants changed payroll services providers a few months before the Plaintiff's employment ceased.[6] The Agreement provides that "Any obligations of SOI cease when the agreement with Company terminates." Agreement (ECF No. 24-1). The Agreement is silent as to the obligations of the employee upon termination of Strategic Outsourcing's agreement with the Company. In Montes v. Shearson Lehman Brothers, Inc., 128 F.3d 1456, 1458 (11th Cir. 1997), the court noted that an employee's move to another work location in another state did not allow her to avoid the terms of her prior agreement to arbitrate disputes with her employer relating to her employment. "We do not find that simply moving between branch offices while the employer/employee relationship continues uninterrupted terminates the existing arbitration agreement between the parties." Id.

Plaintiff's counsel in this case also represents another party, Andrea Nass, who sued the same defendants for an FLSA violation. In Nass v. Falls Mgmt. Serv. Co., No. 18-61500-MGC, the court granted the defendants' motion to compel arbitration (Order entered March 26, 2019, ECF No. 73), and the plaintiff's appeal of that decision was dismissed for lack of jurisdiction, Nass v. Falls Mgmt. Serv. Co., No. 19-11568-C (11th Cir. June 7, 2019). The district court relied on an arbitration agreement between Ms. Nass and TriNet Group, Inc., a "professional employer organization" which was contracted by defendants to provide payroll services in early February 2018; Ms. Nass had accepted the agreement and her acceptance was confirmed by TriNet in an email. Nass

---

[5] The Plaintiff argued that the Defendants' Motion to Compel did not specifically state that they were third-party beneficiaries of the Agreement or that the Plaintiff was equitably estopped from opposing arbitration and, thus, that such arguments were waived. The Court's determination, discussed above, eliminates the need to address the Plaintiff's arguments further.

[6] In his response to the Motion to Compel Arbitration, Plaintiff argues that the Agreement did not survive the end of his employers' relationship with Strategic Outsourcing, which occurred in February 2018. Declaration of Melo (ECF No. 30-1), at ¶¶ 3, 27.

v. Falls Mgmt. Serv. Co., No. 18-61500, Renewed Motion to Compel Arbitration (Sept. 14, 2018, ECF No. 39-1), at 16. If the Plaintiff is correct that the Defendants changed to a new payroll provider, it appears likely that the Defendants could demonstrate that the new payroll provider required a similar arbitration agreement from all employees. The Court need not rely on conjecture, however, as the Court finds that the arbitration agreement remained valid and enforceable by the Defendants.

### C. The Plaintiff's FLSA claim is subject to arbitration

Having found that a valid agreement to arbitrate exists, the Court must determine whether Plaintiff's FLSA claim falls within the scope of the arbitration agreement. The Plaintiff bears the burden of demonstrating that the claims at issue are not subject to arbitration. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (2000). He has failed to do so.

"[C]ourts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." Caley, 428 F.3d at 1367, citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1313 (11th Cir. 2002). Courts in this circuit specifically have found that statutory claims clearly fall within agreements to arbitrate "all controversies or claims arising out of or relating to" an employment agreement. See, e.g., Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) (agreement to arbitrate "any dispute between [the parties]" encompassed Title VII employment discrimination claim). "At root, arbitration is a matter of contract." Hernandez, 898 F.3d at 1304 (internal quotations and citation omitted). The Court in Hernandez noted that the plaintiff had been given an employee handbook with a document titled "Assigned Employee Acknowledgements," which the plaintiff had signed. Id., 898 F.3d at 1303. The document included an arbitration clause stating that any dispute relating to wages would be resolved exclusively through binding arbitration. The Court of Appeals noted that when the plaintiff filed an FLSA action the district court properly stayed the case during arbitration of the

11

parties' dispute.[7] In addition, in Carter v. Doll House II, Inc., 608 F. App'x 903, 904 (11th Cir. 2015), the court affirmed the enforcement of an agreement to arbitrate as applied to several plaintiffs' FLSA claims. See, also, Montes v. Shearson Lehman Brothers, Inc., 128 F.3d 1456 (11th Cir. 1997) (remanding to new arbitration panel plaintiff's claim for overtime pay under the FLSA, recognizing the arbitrability of an FLSA claim); Smith v. Physicians United Plan, Inc., No. 14-60534-CIV-SCOLA, 2014 WL 12797219 (S.D. Fla. Dec. 19, 2014) (agreement to arbitrate "all controversies or claims arising out of or relating to [the employment agreement]" included FLSA claim for unpaid overtime wages). Based on this precedent, the Court finds that the Plaintiff's FLSA claim is within the scope of his agreement to arbitrate.

### III. CONCLUSION

Arbitration is designed to achieve a "quicker and less expensive result through a more streamlined dispute resolution process." Lewis v. Keiser School, Inc., No. 11-62176-CIV, 2012 WL 4193366 (S.D. Fla. Sept. 18, 2012) (declining to compel arbitration where defendant employers delayed seven months to seek arbitration, and plaintiff incurred litigation costs she would not have incurred in arbitration). In this case, the delay in arriving at an arbitration proceeding was not the fault of the Defendant.

The Court finds that the Plaintiff agreed to arbitrate all disputes "arising from or relating to" his employment and that he has failed to demonstrate that the FLSA claims at issue are not subject to arbitration. For the reasons stated above, it is

RECOMMENDED that the Defendant's Motion to Compel Arbitration and Stay Lawsuit (ECF No. 24) be GRANTED.

---

[7]However, the court vacated the district court's entry of default judgment against the plaintiff based on his default in the underlying arbitration, finding "no basis in the FAA, the caselaw, or anywhere else" for the default judgment. Id., at 1305.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with The Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 11th day of July, 2019.

*[signature]*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Jose E. Martinez
Counsel of Record